**UNITED STATES v. 0.38 ACRES OF LAND MORE OR LESS, SITUATE IN QUEENS COUNTY, CITY AND STATE OF NEW YORK, et al.**

**No. 88.**

United States District Court
E. D. New York.

Jan. 6, 1954.

35th Avenue and 165.16 feet on 37th Street, the land area comprising 16,532 square feet.

Title vested in the plaintiff on December 31, 1952. There are two buildings on the property, of which the main one was finished in 1920—a three-floor reinforced concrete structure having a gross floor area of 26,055 square feet. There is also an extension one-story building annex, built in 1927, containing a floor area of 3,098 square feet, and a one-story pump room containing 272 square feet, a like pump turbine shed of about 56 square feet, and a paint shed of about 108 square feet. Thus the total area of all structures is about 29,589 square feet. The entire plot is not so covered, for there is a yard area on the 37th Street side.

The property was purchased by the present owner, Mylsher Realty Co., Inc., in 1946 for the sum of $120,000 subject to an existing lease to the plaintiff which had been entered into in 1942, for use as a "Signal Corps Photographic Center"; the annual gross rent was $17,000, payable monthly. That lease was indefinite in term, and was subject to termination by the Government on sixty days' written notice. It contains this provision:

> "13. The Government shall maintain the said premises in good and tenantable condition during the continuance of this lease or renewal thereof and shall make all repairs, except structural repairs, which the Lessor agrees to make at its sole expense * * *."

The defendant's witness Morrell testified that he had not considered that or any other lease in stating his opinion as to the value of the property.

The buildings other than the sheds are entirely occupied by the plaintiff for the storage and projection of photographic films, and the storage of suitable material and equipment; whether distribution of films is also made from the premises is not clearly shown.

Harry T. Dolan, Sp. Asst. to Atty. Gen., for petitioner-plaintiff.

Nathan A. Rothstein, New York City, for defendant Mylsher Realty Co., Inc., et al.

BYERS, District Judge.

The court is confronted here with the duty of fixing the fair value to be paid by the United States in this condemnation proceeding for the land and buildings at the southwest corner of 35th Avenue and 37th Street in Long Island City, having a frontage of 100.1 feet on

The property was fully inspected by the undersigned on May 29, 1953 in the presence of the attorneys for both parties and the respective representatives of the latter; at the hearings on October 5th and 6th, the court had the benefit of the testimony of the following witnesses:

John H. Eisele and Frank B. Morrell, called by the defendant; and

John A. Bingham and George S. Potter, called by the plaintiff.

The qualifications of all of these were well attested and their testimony impressed the court as that of well informed and candid gentlemen.

The defendant's claim for compensation is based upon the theory that since the buildings were erected for the special purposes above stated and have been continuously so maintained and operated, the only true test of fair value on the critical date, results from applying the so-called summation method of computing the reproduction cost of the structures, less depreciation, and adding to that the value of the land as appraised. The figures so arrived at are $233,367 for the buildings and $50,000 for the land, making a total figure of $283,367.

As an alternative, the defendant suggests the capitalization of the conjectural rental value, which the witness Morrell estimates at $22,201.50, and which he would capitalize so as to produce a valuation of $277,518. In that connection it is to be noted that he first testified that he had not consulted any leases in making his appraisal, because he knew of no comparable property; thus his reasoning in this connection is entirely the product of conjecture.

The Government urges that the summation method is inapplicable since these buildings together do not constitute a unit which is so unique and unusual in its design and structure as to justify this forced and artificial theory of valuation; but that the true method of appraisal is shown by the considerations paid in sales of comparable properties in the vicinity, close enough in point of time to be truly indicative of market value; also that a capitalization of rental as shown by leases which are informative because of the nature of the property to which they refer is of only secondary and dilute importance.

Based upon the court's inspection and observation of the property, the conflicting testimony of the witnesses as to values and applicable theories of appraisal, and the physical evidence of structural deterioration which is revealed in the photographic exhibits received in evidence, the following are the *Findings*:

1. The main building involved in this proceeding was completed in 1920 and was therefore 32 years old in 1952; the annex was built in 1927 and was therefore 25 years old in 1952; they are both of reinforced concrete construction known as the "flat slab" system. As to the former, the flat concrete floors rest directly on top of concrete columns without the use of beams, girders, structural steel, wood or other supports, and the floors have a capacity for carrying as later stated. The interior supporting concrete columns are round or cylindrical, 22 inches, 18 inches and 14 inches in diameter at the ground, and at the first and second floors respectively, and are topped with flared column caps and square drop heads.

The exterior walls, stair walls, vault walls and shaft walls are also constructed of solid reinforced concrete; other interior partitions are generally constructed of terra cotta blocks.

On the roof there is housing for elevator machinery, ventilating equipment, sprinkler pressure tank, ventilating shafts, etc.

The building was designed to carry a live load of 130 pounds a square foot plus a dead load of 90 pounds per square foot, or a total of 220 pounds. The roof was designed to support a 40 pound live load, a 40 pound roofing load and a 75 pound dead load, or a total of 155 pounds.

It contains three 10' 0" by 10' 2" film storage vaults on the ground floor and two 6' 6" by 6' 6" vaults on the second floor, each equipped with 12 and 9 sprinkler heads respectively and a separate sprinkler alarm for each vault, explosion-proof electric light fixtures, and a separate ventilating shaft of solid concrete walls from each vault to a point ten feet above the roof, controlled by automatic fusible link shutters and double fireproof doors.

The annex is built of solid reinforced concrete floor and roof, 12" solid brick exterior walls and 8" solid brick vault walls and is one ceiling high, and is described as a film storage annex. It contains 17 vaults, 15' 6" by 4' 7", properly equipped with sprinkler heads and fire alarm system, the sprinklers being connected with water mains in the street. There are three sheds adjoining the second building, of brick or concrete block construction, containing respectively a pump room, a pump turbine shed and a paint shed, the dimensions of which respectively are: 34' by 8'; 7' by 8'; 13' 6" by 8'.

2. These buildings, considered as a unit, were adapted to the development, projection and storage of photographic films, by reason of the presence within the main and annex buildings of 22 vaults for the storage of such films, equipped as has been stated with vents and adequate sprinkler system and fireproof doors.

■ 3. The vaults do not constitute integral parts of the buildings themselves but could be removed without affecting the essential properties of either building.

Comment:

Justification for the foregoing finding rests in part upon the following testimony of the witness Morrell (S.M. p. 102):

"Q. Did you believe that this building was adaptable and suitable for any other industrial use, other than the purpose for which it was originally designed, or which the Government was actually using it for on the date of appropriating it? A. Provided certain things were removed.

"Q. What would you have to remove? A. All of the rooms, those projection rooms, the storage rooms, the vaults. No one in any other line of business would use it with all those partitions and walls and rooms in it. They would want all of those things taken out so that they would have the clear space.

"Q. Did you estimate the cost of doing that? A. No."

These vaults occupy not to exceed 2% of the total area of the main building and about 39% of the annex.

4. The buildings are physically connected, and together constitute a factory property in which light manufacturing could be conducted, so far as the design and essential features of the edifice are concerned.

5. The buildings, considered as a unit, are not so unique in characteristics as to justify the application of the summation method of appraisal.

Comment:

■ No better statement of the applicable rule is known than that contained in U. S. v. 11 Acres of Land, D.C., 54 F.Supp. 89, in which the court was dealing with a property upon which had been erected two hangars for air-craft, as described in the opinion. As to the theory of valuation, it is said, 54 F.Supp. at page 92:

"Defendant contends that the subject property is of a specialty character which should be appraised at the fair market value of the land, and the cost of reproduction of the improvements thereon, less depreciation.

"In this, it is in error.

"It is true that such a rule prevails as to specialty property such as churches, schools, clubhouses, and in some cases public utility plants, but not to property of the character of the subject property. The only sense in which that is special property is that it was constructed specially for the use of the owner, but that is not the test, as it is not the special value to the owner or to the taker that fixes the value in a condemnation proceeding, the test being just compensation, which is ordinarily fair market value."

6. Sales of comparable properties referred to in the testimony of Potter, sufficiently proximate in point of time to be informative, tend to indicate that the fair value of this property as a whole does not exceed $150,000 as of December 31, 1952.

### Comment:

Having in mind (a) the extent to which the exterior of the building has been permitted to deteriorate (see, for instance, cracks in the annex wall requiring shoring up) in the important respects testified to by all of the witnesses and observed by the court as to both buildings, and as are portrayed in the photographs which have been received in evidence, and (b) the necessity for renewals or extensive repairs to the elevator and its machinery, and much interior renovation, the difficulty of appraising the property at a fair figure is greatly enhanced because there is no standard for measuring the physical deterioration in one building as compared with another, and consequently the figure stated is at best an approximation.

7. The fair value of the property as a unit should be deemed to have been enhanced for present purposes by the vault equipment to which reference has been made, and which manifestly renders it particularly available for the use for which the Government has acquired it.

### Comment:

One cannot close his eyes to the fact that the plaintiff began to use this property in connection with the development, projection and storage of photographic films and materials in 1942 and has continuously so operated the buildings and equipment ever since; nor that acquisition of ownership for the same purposes is the immediate object of this proceeding. Thus the special adaptability of these buildings for the said purposes constitutes an intangible but practical element of value not wholly to be measured by the price paid for comparable buildings,—one or perhaps two of which contain one or more vaults suitable for the safe storage of films.

Fairness is thought to require the addition of something more than a nominal sum representing that equipment, to the appraised value referred to in Finding 6. That sum is thought to be $20,000.

8. The fair, reasonable and sound value of this property as a whole is therefore fixed at $170,000.

### Conclusion of Law.

The plaintiff is directed to pay to the defendant, Mylsher Realty Co., Inc., the sum of $170,000.

Settle decree.